**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| BRIAN RANWICK, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>TEXAS GILA, LLC, a Texas limited liability corporation d/b/a MUNICIPAL SERVICES BUREAU,<br><br>                    Defendant. | Civil No. 13-cv-2792 (RHK/SER)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff Brian Ranwick ("Plaintiff"), a Minnesota attorney, filed this matter, which is his second class action in which he has alleged to have been an aggrieved consumer.[1]   In the instant matter, Plaintiff asserts that Texas Gila, LLC d/b/a Municipal Services Bureau ("MSB") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* by placing autodialed collection calls to his cell phone.  However, in accordance with the applicable interpretation, Plaintiff had previously consented to telephone calls to his cell phone and never revoked his consent.  Accordingly, Plaintiff's claims under the TCPA are wholly without merit and MSB's motion for summary judgment should be granted.  Alternatively, MSB has mooted Plaintiff's claims via a valid Rule 68 Offer of Judgment.

## I.     PROCEDURAL POSTURE

---

[1]      *See* MN. U.S. Dist. Court File No., 12-326 (DWF/SER), *Kevin W. Rouse, Emily M. Rouse and Brian L. Ranwick v. Hennepin County.*

Plaintiff commenced this putative class action on September 20, 2013, via service of his Minnesota state court complaint on MSB.  Doc. No. 1 – Notice of Removal.  On October 10, 2013, MSB removed the lawsuit to this Court.  *Id.*  Fact discovery closed on April 1, 2014 and expert discovery closed on June 1, 2014.  Doc. No. 9.  Plaintiff's motion for class certification has been set for August 1, 2014.  Doc. No. 21.  MSB's motion for summary judgment is also set for a hearing on August 1, 2014.  Doc. No. 23.

## II.    FACTS

Between 2003 and the present, Plaintiff used only one phone number, a cell phone number: *** - *** - 3705.  Am. Compl. 13.  Between 2011 and the present, Plaintiff provided his cell phone number to the Minnesota Department of Revenue ("MN DOR") on six occasions.  First, Plaintiff's cell phone number was provided to the MN DOR via 2011 Minnesota state tax return and via his 2012 Minnesota and Federal tax return.  Aff. of Poncin, ¶ 2, Ex. A, Depo. of Kathy Wiederich, p. 30, lines 12-14.

Plaintiff also provided or otherwise confirmed his cell phone number to the MN DOR via three phone calls.  On June 16, 2011, Plaintiff verified his cell phone number as his phone number during a phone conversation with the MN DOR.  Aff. of Poncin, ¶ 2, Ex. A, Depo. of Kathy Wiederich, p. 21, lines 4-12, p. 28, lines 9-13 and Ex. 5 (MN DOR collection notes).  According to the MN DOR's records, Plaintiff also likewise confirmed his cell phone number during phone conversations on May 25, 2012 and December 26, 2012 with the MN DOR.  *Id.*, ¶ 2, Ex. A, Depo. of Wiederich, p. 28, lines 14-25 and p. 29, lines 1-9 and Ex. 5 (MN DOR collection notes).

Plaintiff was issued two parking citations by the City of Minneapolis. Am. Compl. ¶ 8. The State of Minnesota, via the Department of Revenue ("MN DOR"), attempted to collect the fines owed and placed the fines with MSB. Am. Compl. 8-11. The fines were placed with MSB on May 25, 2012 and MSB did not place its first call to Plaintiff until May 30, 2012. Aff. of Aaron Million, ¶ 3. MSB proceeded to call Plaintiff ten times. Aff. of Poncin, ¶ 3, Ex. B, Depo. of Brian Ranwick, p. 36, lines 11-17. Plaintiff concedes that he never told the MN DOR that it could not call his cell phone, specifically stating that, "No, I never told the Department [of Revenue] they could not call me on my cell phone or any other number. I never told the Department they couldn't call me." *Id.* ¶ 3, Ex. B, Depo. of Ranwick, p. 76, lines 9-12. Moreover, Plaintiff never contacted MSB and therefore could not have revoked his consent. *Id.* ¶ 3, Ex. B, Depo. of Ranwick, p. 35, lines 22-25 and p. 85, lines. 2-14.

### A.    Offer of Judgment

On March 25, 2014, MSB served a Rule 68 Offer of Judgment ("OOJ") on Plaintiff, which offered Plaintiff $5,500.00, inclusive. Aff. of Poncin, ¶ 4, Ex. C. Plaintiff did not accept the OOJ or take any action in regard to the same. *Id.* ¶ 4.

## III.   LEGAL ARGUMENT

### A. Summary Judgment Standard

Summary Judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears

the burden of showing that the material facts in the case are undisputed. *Id.* at 322, 106 S.Ct. 2548; *Whisenhunt v. Sw. Bell Tel.,* 573 F.3d 565, 568 (8th Cir.2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London,* 574 F.3d 885, 892 (8th Cir.2009); *Carraher v. Target Corp.,* 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wingate v. Gage Cnty. Sch. Dist., No. 34,* 528 F.3d 1074, 1078-79 (8th Cir.2008).

## B. Legal Analysis

The TCPA prohibits making a telephone call with an automatic telephone dialing system or an artificial or prerecorded voice to a telephone number assigned to a cellular telephone service, unless that call is "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). The FCC defined "prior express consent" in a 1992 Declaratory Ruling. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 ¶ 7 (Oct. 16, 1992) (stating that the definition of "prior express consent" is set forth in paragraphs 29-35 of the Ruling). "[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached." *Id.* ¶

31.  This definition was recently reaffirmed in a March 27, 2014 Declaratory Ruling.   *In re GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling*, ¶ 10 (Mar. 27, 2014).

This rule is a binding interpretation of the TCPA.  *See Baird v. Sabre Inc.*, CV 13-999 SVW, 2014 WL 320205, at *5 (C.D. Cal. Jan. 28, 2014).  Specifically, district courts are required by the Hobbs Act to give deference to FCC's rulings.  *See, e.g. CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 449-50 (7th Cir. 2010) (noting that "the Hobbs Act prevents the district court from reviewing the validity of FCC regulations"); *Kenny,* 2013 WL 1855782 at *5 (the plaintiff "acknowledge[d] that the Court [wa]s bound to follow FCC rules and regulations relating to the TCPA" pursuant to the Hobbs Act); *Moore v. Firstsource Advantage, LLC,* Case No. 07-CV-770, 2011 WL 4345703, *10 n. 10 (W.D.N.Y. Sept. 15, 2011) (holding that "[t]he FCC's declaratory ruling is a `final order' entitled to precedential effect" and that "the federal courts of appeal have exclusive jurisdiction over appeals of final orders by the FCC" under the Hobbs Act); *Frausto v. IC System, Inc.,* Case No. 10 CV 1363, 2011 WL 3704249, *2 (N.D. Ill. Aug. 22, 2011) (acknowledging that the FCC's rulings bind the court pursuant to the Hobbs Act); *Greene v. DirecTv, Inc.,* Case No. 10 C 117, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) (in rejecting the plaintiff's request for the court to adopt a different interpretation of "express consent" under the TCPA because of his belief that the FCC's construction was too narrow, the court stated that it "must accept the FCC's interpretation of the TCPA . . . . [b]ecause [it] ha[d] no jurisdiction to determine the validity of FCC orders."); *Hicks v. Client Servs., Inc.,* Case No. 07-61822-CIV, 2009 WL 2365637, *4 (S.D. Fla. June 9,

2009) (noting that "Congress has charged the FCC with rule-making authority under the TCPA" and that the "[c]ourt d[id] not have the jurisdiction to review FCC rulings under the TCPA.")

Importantly, the term "prior express consent" does not require that an individual "consent specifically to be called by Defendant on her cellular number from an automatic telephone dialing system." *Steinhoff v. Star Tribune Media Co., LLC*, 13-CV-1750 SRN/JSM, 2014 WL 1207804 (D. Minn. Mar. 24, 2014). Voluntarily providing the telephone number is sufficient prior express consent to receiving telephone calls from an automatic telephone dialing system. *See, e.g.*, *Baird*, 2014 WL 320205, at *5-6; *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 418 (E.D.N.Y. 2013); *Murphy v. DCI Biologicals Orlando, LLC*, 6:12-CV-1459-ORL, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013); *see also Pinkard v. Wal-Mart Stores, Inc.*, 3:12-CV-02902-CLS, 2012 WL 5511039, at *2, *4 (N.D. Ala. Nov. 9, 2012) (holding that prior express consent to receive text messages was given when the individual provided her telephone number to Wal-Mart, even though the employee did not explicitly seek permission to send text messages). "[T]he authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent." *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012). Neither the FCC nor the case law provides a basis on which to parse out the "prior

express consent" to contact into distinct categories—providing a telephone number is providing express consent to be contacted at that telephone number.[2]

In 2008, the FCC concluded that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 564 (Jan. 4, 2008).  At other points in the Ruling, the FCC states that express consent is found when a consumer provides the telephone number "in connection with an existing debt," indicating that the debt existed before the telephone number was provided.  *See id.* at 559, 564.  This 2008 Declaratory Ruling "reaffirms the FCC's earlier position in its 1992 Order on prior express consent in the context of debt collection."  *Steinhoff v. Star Tribune Media Co., LLC*, 13-CV-1750 SRN/JSM, 2014 WL 1207804 (D. Minn. Mar. 24, 2014).  The only limitation on "prior express consent" in the 1992 Order is that the individual must have released the telephone number before the allegedly offending call was placed.  Indeed, the TCPA uses the term "prior" express consent—indicating prior to the alleged telephone call.

---

[2]     During Plaintiff's deposition, he referred to the *Edeh v. Midland Credit Management, Inc.* case for the proposition that MSP was required to obtain consent specifically to contact him with a prerecorded voice message. 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010).  The Court's position in *Edeh* is not supported by any citations to authority apart from the TCPA; the court ignores the binding FCC Declaratory Rulings and other courts' discussions on the topic, presumably because such rulings were not raised before the *Edeh* court.  Moreover, the *Edeh* opinion is specifically contradicted by *Steinhoff*, which was decided more recently and contains a more thorough analysis of the issue.

Courts have concluded that express consent occurs when people provide their cellular telephone numbers in connection with a debt during the communications between the parties about the particular debt, but before the allegedly improper telephone call was made. *See, e.g.*, *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) ("Pursuant to the FCC ruling, prior express consent is consent to call a particular telephone number in connection with a particular debt that is given before the call in question is placed."). "Federal courts have consistently concluded that when a customer provides a company his or her phone number *in connection with* a transaction, he or she consents to receiving calls about that transaction." *Sherman v. Yahoo! Inc.*, 13CV0041-GPC-WVG, 2014 WL 369384 (S.D. Cal. Feb. 3, 2014) (internal quotation marks omitted); *see also Lardner v. Diversified Consultants Inc.*, 1:13-CV-22751-UU, 2014 WL 1778960 (S.D. Fla. May 1, 2014) ("Prior express consent can be shown by demonstrating that Plaintiff provided her cell phone number to [the creditor] in connection with an existing debt.").

As explained more thoroughly in *Moore v. Firstsource Advantage, LLC*, the FCC's use of the term "during the transaction that resulted in the debt owed," is not specifically defined in the FCC's opinion. 07-CV-770, 2011 WL 4345703, at *10 (W.D.N.Y. Sept. 15, 2011). "[A] commonsense reading of that phrase does not lead to the conclusion that a phone number must be given at the precise time the account is activated." *Id.* The FCC emphasizes whether the telephone number is voluntarily given to the creditor, and therefore "it would strain logic to conclude that a debtor's voluntary provision of a contact number at the time an account is opened would constitute "prior

express consent" to be called at that number, but that the equally voluntary provision of a contact number sometime after the account is opened would not." *Id.*

For example, in several cases, parties have called a business to change their personal contact information from the information provided at the time that they opened an account with the creditor. *See, e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1247 (11th Cir. 2014); *Andersen v. Harris & Harris, Ltd.*, 13-CV-867-JPS, 2014 WL 1600575, at *3 (E.D. Wis. Apr. 21, 2014).  It would not make sense to hold that the individual gives "prior express consent" for the business to contact the telephone number given when an account is opened, but does not give "prior express consent" for the business to contact the telephone number later submitted or confirmed by the same party regarding the same account.  It is the act of the consumer providing or otherwise confirming the telephone number which evidences the prior express consent, not the precise time that the telephone number is provided, that matters for the purposes of the TCPA.

In this instance, Plaintiff provided or otherwise confirmed his cell phone number with the MN DOR, in its attempts to collect the debt.  By confirming his number to the MN DOR, Plaintiff expressly consented to phone calls pursuant to the FCC's ruling and case law interpreting the same.  Indeed, while Plaintiff may try to distinguish "providing" from "confirming" his number, the net result is the same.  As Plaintiff provided his cell phone number to the MN DOR, and never withdrew his consent, the calls made by MSB were done so with express consent and Plaintiff's claims are subject to summary judgment.

Moreover, while Plaintiff is likely to argue that express consent required MN DOR or MSB to obtain Plaintiff's specific consent to call him using an autodialer, the FCC's interpretation and overwhelming case law makes clear that simply providing his phone number to MN DOR, and never revoking the same, constitutes express consent.

## 1.    Alternatively, Plaintiff's Claims Are Moot

Article III of the United States Constitution limits the judicial authority of the federal court system to "Cases" and "Controversies."   "The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions."  *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 446 (1993), *citing Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  If a federal court lacks subject matter jurisdiction over a cause of action, the court "shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).  The case or controversy requirement continues to exist throughout the entire litigation.  To sustain jurisdiction "the parties must continue to have a personal stake in the outcome of the lawsuit."  *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477 (1990).  "It is not enough that a dispute was very much alive when suit was filed . . . .  [T]he parties must continue to have a personal stake in the outcome of the lawsuit."  *Id.* at 477-478.

An offer satisfying plaintiff's entire claim for relief eliminates the controversy between the parties and leaves nothing for the court to resolve – mooting the action and removing jurisdiction.  *See Cameron-Grant v. Maxim Healthcare Services, Inc.,* 347 F.3d 1240, 1244 (11th Cir. 2003); *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3rd Cir. 2004); *Rand v. Monsanto Co*., 926 F.2d 596, 598 (7th Cir. 1991); *Alliance to End*

*Repression v. City of Chicago*, 820 F.2d 873, 878 (7th Cir. 1987); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986); *Abrams v. Interco Inc*., 719 F.2d 23, 32-34 (2d Cir. 1983); *MacKenzie v. Kindred Hosp. East, LLC*, 276 F.Supp.2d 1211, 1219 (M.D. Fla. 2003). "[T]here is no justification for taking the time of the court and the defendant in the pursuit . . . [of] claims which the defendant has more than satisfied." *Abrams v Interco., Inc*., 719 F.2d 23, 32 (2d Cir. 1983).

Plaintiff's acceptance or non-acceptance of the offer is irrelevant. "Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Federal Rule of Civil Procedure 12(b)(1), because he has no remaining stake." *Holstein v. City of Chicago*, 29 F.3d 1145, 1146 (7th Cir. 1994) (citations omitted); *Zimmerman*, 800 F.2d at 390; *Abrams*, 719 F.2d at 32-34; *Spencer-Lugo v. INS*, 548 F.2d 870 (9th Cir.1977). "Under traditional mootness principles, an offer for the entirety of a plaintiff's claim will generally moot the claim." *Weiss*, at 342.

There is a split among courts as to whether serving an offer of judgment prior to a class action renders the claims moot. While the Eighth Circuit has not issued a ruling on this issue, the Seventh Circuit has considered this issue and held that an offer of judgment served prior to the filing of a class certification motion does render the putative class representative's claims moot. *See Damasco v. Clearwater Corp.,* 662 F.3d 891 (7th Cir. 2011). In *Damasco*, the Seventh Circuit considered the plaintiff's argument that allowing offer of judgments to pick off class action plaintiffs and stated:

> Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs.

*Damasco*, 662 F.3d at 896.

In this instance, Plaintiff could have requested a hearing date from the Court, pursuant to its motion practice guidelines and filed the notice of motion.  This action would have prevented any attempt to pick off the class claims.  However, Plaintiff failed to do and did not file this motion until after receiving MSB' OOJ.

Moreover, the Eighth Circuit has held that if class certification is denied, a previously served OOJ will moot out the claims.  *See Hartis v. Chicago Title Insurance Co.,* 694 F.3d 935 (8th Cir. 2012); *Alpern v. UtiliCorp. United, Inc.,* 84 F.3d 1525, 1539 (8th Cir.1996).

### a.    MSB Offered Plaintiff Full Relief

The TCPA allows for statutory damages of up to $500.00 per impermissible phone call.  47 U.S.C. § 227(b)(3)(B).  If the court finds that the defendant "willfully or knowingly" violated the TCPA, it may treble the damage award. 47 U.S.C. § 227(b)(3). The Federal Communications Commission has interpreted "willful or knowing", as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute. *See In re Intercambio, Inc.,* 3 F.C.C.R. 7247, 1988 WL 486783 (F.C.C. 1988).   Indeed, courts have held that the trebling of damages requires intent.  *Harris v. World Financial Network National Bank*, 867 F.Supp.2d 888, 892 (E.D. Mich. 2012); *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768,

776 (11 Cir.2011); *Whatley v. Creditwatch Services, Ltd.*, 2014 WL 1287174 at * 2 (E.D.Tex.).

In this instance, the facts evidence that MSB was provided with Plaintiff's cell phone number, who in turn had provided, or confirmed, his cell phone number to MN DOR. These facts do not support a trebling of any damages that Plaintiff would be entitled to if he prevails. Plaintiff simply cannot prove any intent by MSB to violate any law, by calling the only number Plaintiff has maintained over the last decade. Accordingly, as Plaintiff asserts that MSB used an autodialer to call him ten times, MSB's OOJ, which offered $5,500.00, provided Plaintiff with $500 more relief than he would be entitled to if he prevailed in this matter. The OOJ was served before Plaintiff moved for class certification. Moreover, at the time MSB served Plaintiff with the OOJ, it believed that Plaintiff's class claims were without merit. Accordingly, since the OOJ was served before Plaintiff moved for class certification, the claim is moot. Alternatively, if the Court denies Plaintiff's motion for class certification, which is set for hearing on August 1, 2014, MSB's OOJ offered Plaintiff all that he would be entitled to if he prevailed in this matter and his claims should thus be dismissed. Accordingly, Plaintiff's claims should be dismissed on the grounds that the claims were mooted by the OOJ.

## CONCLUSION

Based upon the foregoing, the Court should grant MSB's motion for summary judgment and dismiss Plaintiff's claims in their entirety.

Dated: June 19, 2014

                                     **MOSS & BARNETT, PA**


                                     s/ Michael S. Poncin
                                     Michael S. Poncin, Esq. (MN 0296417)
                                     James R. Bedell, Esq. (MN 0351544)
                                     Issa K. Moe, Esq. (MN 0391351)
                                     4800 Wells Fargo Center
                                     90 South Seventh Street
                                     Minneapolis, MN 55402
                                     Telephone:  612-877-5000
                                     Fax:  612-877-5999
                                     E-mail:  poncinm@moss-barnett.com
                                     **Attorneys for Defendant**
                                     **Texas Gila, LLC**