## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Brian Ranwick, on behalf of himself and
all others similarly situated,

                                Plaintiff,

v.

Texas Gila, LLC, a Texas limited liability
corporation d/b/a Municipal Services
Bureau,

                                Defendant.

Civ. No. 13-2792 (RHK/SER)
**MEMORANDUM OPINION
AND ORDER**

---

Nicholas R. Nowicki, Brandon T. McDonough, McDonough & Nowicki PLLC, Minneapolis, Minnesota, for Plaintiff.

Issa K. Moe, Michael S. Poncin, James R. Bedell, Moss & Barnett, PA, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

In this putative class action, Plaintiff Brian Ranwick alleges Defendant Texas Gila, LLC ("Texas Gila") called his cellular phone to collect a debt he owed to the Minnesota Department of Revenue ("DOR") using an automated or prerecorded voice, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The first phase of discovery is complete and Texas Gila moves for summary judgment. For the reasons set forth below, its Motion will be granted.

## BACKGROUND

Prior to March 2012, Ranwick's vehicle was issued two parking tickets by the City of Minneapolis. Although the parties have provided very little factual background, it

appears that Ranwick's sister was using his car when the infractions occurred and never paid the citations. The DOR attempted to collect the fines owed for the two citations and, unsuccessful, hired Texas Gila to collect the fines on its behalf and provided Texas Gila with Ranwick's cell phone number. Between May and July 2012, Texas Gila called Ranwick's cell phone twelve times and left prerecorded messages. (Million Dep. Ex. 3.) Eventually, the DOR recovered payment for the citations by offsetting Ranwick's property tax refund.

Ranwick instituted this action on behalf of himself and others similarly situated, asserting Texas Gila's prerecorded calls to his cell phone violated the TCPA. In its defense, Texas Gila contends Ranwick consented to the calls by providing the DOR with his cell phone number.

The DOR's records show that Ranwick provided his cell phone number on his 2011 Minnesota and federal tax returns and his 2012 federal tax return. (Widereich Dep. at 30.) They further indicate that he confirmed his cell phone number during the following three phone calls to the DOR:

- June 16, 2011: "TP called about CACS Loc 2 debt. Verified address is in Plymouth MN, cell phone is xxx-xxx-3705. Updated address & added phone to contacts."

- May 25, 2012: "Brian [Ranwick] called. Verified address and phone. He stated that his sister got these tickets driving his car and that his dad will pay for them. I explained that his case has been referred to [Texas Gila]

> collection agency and told him to contact them to set up payment agreements. Provided him with phone number for [Texas Gila]."
> 
> - December 26, 2012: "Brian L Ranwick called in, address and phone are current. Brian asked for more information about the Oct 15 2012 001 OAD citation, I told him we do not have a citation description for that debt other th[a]n the citation # and origination date, I encouraged him to call the county to find out what offense the citation was for. He said he would call back to arrange payment in full once he knows what the citation was for."

(Id. Ex. 5.)

On March 25, 2014, Texas Gila made an Offer of Judgment to Ranwick under Federal Rule of Civil Procedure 68 in the amount of $5,500.00, which Ranwick declined. (Poncin Aff. Ex. C.) The parties have completed the first phase of discovery. Defendant moves for summary judgment, asserting the action is moot given its offer of judgment and, alternatively, that it did not violate the TCPA as a matter of law because Ranwick consented to the phone calls. The Motion has been thoroughly briefed, the Court heard oral argument August 1, 2014, and it is now ripe for disposition.

**STANDARD OF DECISION**

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The moving party bears the burden of showing that the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042

(8th Cir. 2011) (en banc).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Beard v. Banks, 548 U.S. 521, 529–30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

**I.    Mootness**

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "cases" and "controversies."  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.  Thus, we will dismiss as moot a case in which changed circumstances have already provided the requested relief and eliminated the need for court action."  Teague v. Cooper, 720 F.3d 973, 976 (8th Cir. 2013) (internal quotations and citation omitted).  As mootness is a matter of the Court's subject-matter jurisdiction, the Court must address it before reaching the merits of the case.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–97 (1998).

Texas Gila argues this case is moot because it has offered Ranwick all the relief he is personally entitled to under the TCPA for his claims:  $5,500.  The TCPA provides $500 statutory damages per violation, plus treble damages if the violation was "willful."

47 U.S.C. § 227(b)(3). So Texas Gila's offer would compensate Ranwick for eleven violations (putting treble damages aside). But Ranwick's expert testified that Texas Gila's records indicate it left *twelve* prerecorded messages on Ranwick's cell phone (Million Dep. at 24 & Ex. 3), which would entitle him to at least $6,000.00 in damages under the TCPA. Viewing the evidence in the light most favorable to Ranwick, Texas Gila did *not* offer Ranwick all of the damages he may be entitled to under the TCPA and its Offer of Judgment therefore did not moot the action.

## II.     TCPA Violations

The TCPA makes it unlawful "for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). It appears undisputed that Texas Gila made calls to Ranwick's cellular telephone using a prerecorded voice. The only issue before the Court is whether Texas Gila has proved its calls were made with Ranwick's "prior express consent." Texas Gila argues that Ranwick consented to such calls when he voluntarily provided his cell phone number to the DOR on numerous occasions. Ranwick maintains he did not provide consent to the calls because he never told the DOR it could contact him using an automatic dialing system or an artificial or prerecorded voice.

The Federal Communications Commission ("FCC"), which is charged with implementing the TCPA, has issued two Rulings on the meaning of "prior express

- 5 -

consent"—one in 1992 and one in 2008. In its 1992 Report and Order, the FCC explained:

> We emphasize that under the prohibitions set forth in § 227(b)(1) and in §§ 64.1200(a)-(d) of our rules, only calls placed by automatic telephone dialing systems or using an artificial or prerecorded voice are prohibited. If a call is otherwise subject to the prohibitions of § 64.1200, persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

1992 FCC Report and Order, CC Docket No. 92-90, FCC 92-443 (Oct. 16, 1992) [hereinafter "1992 Ruling"].

In 2008, the FCC further elaborated on "prior express consent" in response to a request for clarification on whether the TCPA applied to debt collection calls. In its 2008 Ruling, the FCC stated:

> Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party. Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

2008 FCC Declaratory Ruling, CG Docket No. 02-278, FCC 07-232 (Jan. 4, 2008) [hereinafter "2008 Ruling"].

Ranwick seeks to avoid the application of these Rulings by arguing they are erroneous and not binding on the Court. To the contrary, the Hobbs Act reserves to the

courts of appeals the "exclusive jurisdiction to determine the validity of FCC orders." Nack v. Walburg, 715 F.3d 680, 685 (8th Cir. 2013). He argues the Hobbs Act does not apply to the 2008 Ruling and cites Mais v. Gulf Coast Collection Bureau, Inc., 944 F. Supp. 2d 1226, 1237 (S.D. Fla. 2013), in support. Mais held the Hobbs Act does not apply to private TCPA suits for damages, so it disregarded the FCC's 2008 Ruling and applied its own interpretation of "prior express consent." Id. ("[T]he Plaintiff does not seek to collaterally attack an FCC order in any respect, and this action's central aim is not to invalidate any such order or to enjoin action that is the outcome of the agency's order. Rather the purpose of this lawsuit is to obtain damages for violations of the TCPA.") (internal quotation and citation omitted).

      However, Mais is contrary to the Eighth Circuit's holding in Nack. There, the recipient of a fax advertisement sued the sender under the TCPA and the district court granted summary judgment, concluding the regulation the plaintiff sued under did not apply. 715 F.3d at 682–83. On appeal, the Circuit deferred to the FCC's interpretation of its regulation and clarified that the Hobbs Act applied to the defendant/appellee's attack on the validity of the regulation, even though "the question of [its] validity ar[ose] in a suit between two private parties" for money damages. Id. at 686. Given this directive from the Circuit, the Court declines to follow Mais and will defer to the FCC's interpretation of "prior express consent" rather than opine on its validity. See Sartori v. Susan Little & Assocs., P.A., No. 13-2162, 2014 WL 3302588, at *4–5 (10th Cir. Jul. 9, 2014) (applying 2008 Ruling and concluding plaintiff consented to calls where he provided his phone number for his account with the creditor business); Osorio v. State

Farm Bank, 746 F.3d 1242, 1252 (11th Cir. 2014) (applying FCC's interpretation, although parties did not challenge it); Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268–69 (3d Cir. 2013) (applying 1992 Ruling).

Under the FCC's interpretation of "prior express consent" articulated in these Rulings, the Court concludes Ranwick consented to be called using a prerecorded voice by the DOR and, therefore, by Texas Gila as its agent.  The thrust of the FCC's Rulings is that a person need not specifically consent to be contacted using an autodialer or artificial or prerecorded voice.  Rather, a person who knowingly provides his telephone number to a creditor in connection with a debt is agreeing to allow the creditor to contact him regarding his debt, regardless of the means.  That is what Ranwick did here.

On May 25, 2012, Ranwick contacted the DOR regarding the fines he owed for the two parking citations.  During that phone call, he confirmed his contact information for the DOR—including his cell phone number.  The DOR then informed him that it had placed the debt with a collection agency, and it gave him a number at which he could reach Texas Gila to resolve the matter.  At no point during his phone call with the DOR did he instruct it not to call or contact him.  (Ranwick Dep. at 76 ("No, I never told the Department they could not call me on my cell phone or at any other number.  I never told the Department they could not call me.").)  Nor did he ever instruct Texas Gila not to contact him.  Five days later, Texas Gila called his cell phone and left the first in a series of prerecorded voice messages.

As Ranwick provided his cell phone number to the DOR in connection with the same debt about which Texas Gila called him and Ranwick never attempted to revoke his

consent or limit the DOR's or Texas Gila's use of his cell phone number, Texas Gila did not violate the TCPA and is entitled to summary judgment on Ranwick's claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Texas Gila's Motion to for Summary Judgment (Doc. No. 22) is **GRANTED** and the Complaint (Doc. No. 1-1) is **DISMISSED WITH PREJUDICE**. **IT IS FURTHER ORDERED** that Ranwick's Motion to Certify a Class (Doc. No. 20) is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 7, 2014                                    s/Richard H. Kyle
                                                        RICHARD H. KYLE
                                                        United States District Judge